William C. FRASER, Plaintiff-Appellee,

v.

MERRILL LYNCH PIERCE, FENNER & SMITH, INC.; Franklyn C. Shulman; Allan G. Kenzie, Defendants-Appellants.

No. 86–2091.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1987.

Decided April 28, 1987.

Rehearing and Rehearing En Banc Denied July 14, 1987.

G. Randall Whittenberger (David F. Albright, Harry M. Rifkin, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for defendants-appellants.

Bruce Gregory Harris (Paul M. Vettori, Frank, Bernstein, Conaway & Goldman), Baltimore, Md., for plaintiff-appellee.

Before WIDENER and HALL, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

SPENCER, District Judge:

This is an interlocutory appeal from the denial of a motion to compel arbitration, over which we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). *See Garner Lumber Co. v. Randolph E. Valensi, Lange, Inc.,* 513 F.2d 1171 (4th Cir.1975). The district court denied this motion on the grounds that Merrill Lynch had waived arbitration by its use of the trial litigation machinery during the period at issue, and that compelling arbitration would unfairly prejudice Fraser. We agree and affirm.

William C. Fraser, Jr. filed his complaint in this securities case in October 1981.[1]

Merrill Lynch, Pierce, Fenner & Smith, Inc. and one of its brokerage representatives (collectively "Merrill Lynch") answered the complaint and asserted a counterclaim against Fraser on November 19, 1981. In February 1986 Merrill Lynch moved, for the first time, to compel arbitration as provided in two of Merrill Lynch's form brokerage agreements executed by Fraser in 1980.

Extensive discovery efforts were made in the interval between the complaint and the motion to compel arbitration. Interrogatories and requests for production were propounded and at least thirty-five depositions were noticed by both sides. The district court considered at least eight discovery motions, four of which were made by Merrill Lynch. All pending discovery matters were referred to a United States Magistrate for resolution by order entered May 9, 1984.

The parties' legal skirmishes were not confined to the discovery field. Merrill Lynch filed two motions in limine, one motion for partial summary judgment, and three motions to dismiss, one of which was made under Fed.R.Civ.P. 37(d). Merrill Lynch's motion for partial summary judgment was granted in part by order entered September 28, 1983. The parties participated in four status conferences, five hearings on pending motions, and two pretrial conferences. Two trial dates were cancelled prior to the arbitration motion hearing date, which had itself been originally scheduled as a trial date.

■ The denial of a motion to compel arbitration, based on a finding of waiver, is reviewed de novo.[2] In *Maxum Foundations, Inc. v. Salus Corp.,* 779 F.2d 974 (4th Cir.1985), upon considering the record and finding that the defendant had not

---

**1.** The complaint alleged violations of sections 12(2) and 17 of the Securities Act of 1933 (15 U.S.C. §§ 77*l* and 77q), sections 10(b) and 15(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b) and 78o(c)), Rule 10b–5, New York Stock Exchange Rules 405 and 342(a), National Association of Securities Dealers Rules of Fair Practice, and Maryland securities law, along with common law fraud, gross negligence,

and breach of fiduciary duty. All claims arose out of transactions executed by Merrill Lynch for Fraser's option account.

**2.** In the case under review, we defer to the district court's factual determination that Fraser expended substantial time and effort during the discovery and pretrial motion proceedings.

waived its right to arbitrate, this Court remanded with direction to stay proceedings pending arbitration even though the district court had not addressed the waiver issue. Plenary review comports with the standard applied by other courts to the question of waiver of arbitration where the underlying facts were not in dispute. *See Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 806 F.2d 291 (1st Cir.1986); *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156 (5th Cir.1986); *Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691 (9th Cir.1986).

■ "A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum,* 779 F.2d at 981. The dispositive question is whether the party objecting to arbitration has suffered actual prejudice. *Id.* at 982. Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. *See Carolina Throwing Co. v. S & E Novelty Corp.,* 442 F.2d 329 (4th Cir.1971) (delay of three to four months and filing of counterclaim). However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice. "[W]here a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Price,* 791 F.2d at 1161.

Fraser had to respond to a number of potentially damaging motions, including a motion for partial summary judgment and three motions to dismiss. Merrill Lynch's motion for partial summary judgment was granted in part, thus judgment was actually rendered on several of Fraser's claims over two years before Merrill Lynch demanded arbitration. In addition, the pass-

ing of two trial dates prior to the hearing date for Merrill Lynch's motion to compel arbitration shows that Fraser had to prepare repeatedly for trial rather than for arbitration.

In *Maxum,* we found the defendant's filing of discovery requests and noticing of depositions, along with participation in the plaintiff's depositions, to have been harmless to the plaintiff. The plaintiff's depositions had been completed before any suggestion of arbitration had been made, and the plaintiff did not claim that the discovery it had obtained would impede it in arbitration. The plaintiff in *Maxum* responded to the defendant's discovery requests after the arbitration motions had been made, thus bypassing the alternative of seeking a protective order until those motions had been decided. In the case under review, discovery had proceeded for over four years before Merrill Lynch moved to compel arbitration. During that time Fraser had to make, argue, or defend against at least eight discovery motions before the district court referred the parties to a United States magistrate for resolution of all pending discovery issues.

■ The non-discovery proceedings in this case compel the finding that staying trial proceedings in favor of arbitration at this point would result in actual prejudice to Fraser. The discovery proceedings below also prejudicially burdened Fraser to the extent that they related to arbitrable claims. We hold that Merrill Lynch waived its right to arbitration of either Fraser's claims or its own counterclaim.

Merrill Lynch argues that it should not be charged with most of the four-and-one-half-year delay in this case because, under what Merrill Lynch terms the "overwhelming view," a motion to compel would have been futile prior to the decision in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).[3] In *Byrd,* the United States Supreme Court rejected the "intertwining doctrine," under which, "[w]hen arbitrable and nonarbitra-

---

3. Merrill Lynch does not dispute that, throughout the entire period at issue, it knew or should have known of the potential for arbitration of its own counterclaim and most of Fraser's claims.

ble claims arise out of the same transaction, and are sufficiently intertwined factually and legally, the district court ... may in its discretion deny arbitration as to the arbitrable claims and try all the claims together in federal court." *Id.* at 216–17, 105 S.Ct. at 1240. At the time Merrill Lynch filed its complaint in this case, the intertwining doctrine had been adopted in two circuits, *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318 (5th Cir.1981); *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir.1979), and referred to approvingly in a third. *De Lancie v. Birr, Wilson & Co.*, 648 F.2d 1255, 1258–59 n. 4 (9th Cir.1981) (dicta). By the time *Byrd* was decided, the number of circuits embracing the intertwining doctrine had risen to four. *Byrd v. Dean Witter Reynolds, Inc.*, 726 F.2d 552 (9th Cir.1984), *rev'd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023 (11th Cir. 1982). Fraser's claim under Section 12(2) of the Securities Act of 1933 is nonarbitrable. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Since this claim was intertwined with Fraser's other claims, Merrill Lynch argues, "there was a clear basis to believe" that arbitration would be denied.

Merrill Lynch's basis to believe that the court below would compel arbitration was, however, at least equally clear. First, this Court had not directly addressed the intertwining doctrine prior to *Byrd*.[4] Second, the intertwining doctrine had been rejected in two other circuits at the time Merrill Lynch filed its complaint in this case. *Lee v. Ply*Gem Industries, Inc.*, 593 F.2d 1266 (D.C.Cir.), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638 (7th Cir.1981). Two more circuits had rejected the doctrine by the time *Byrd* was decided. *Liskey v. Oppenheimer & Co.*, 717 F.2d 314 (6th Cir.1983); *Surman v.*

*Merrill Lynch, Pierce, Fenner & Smith*, 733 F.2d 59 (8th Cir.1984). When the instant suit was filed, the intertwining doctrine was not the "overwhelming view." Merrill Lynch could have presented a good faith argument against the intertwining doctrine in this case, long before the Supreme Court decided *Byrd*, if it had deemed arbitration to have been in its best interest. The prejudice already manifest on the record before this Court is aggravated by Merrill Lynch's four-and-one-half-year delay in moving to compel arbitration. Further, the force of Merrill Lynch's argument regarding the pivotal impact of the *Byrd* case on its decision to compel arbitration is substantially weakened by the fact that some eleven months and two trial dates passed subsequent to the *Byrd* decision but prior to any attempt to compel arbitration.

We remain mindful of the strong policy in favor of arbitration, which "protects the contractual rights of the parties and their rights under the Arbitration Act." *Byrd*, 470 U.S. at 221, 105 S.Ct. at 1243. The purpose of the Arbitration Act "was to place an arbitration agreement 'upon the same footing as other contracts, where it belongs.'" *Id.* at 219, 105 S.Ct. at 1242 (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)). However, in keeping with its contract-based aims, the Act provides an exception to its mandate for cases in which the moving party is in default in proceeding with arbitration. 9 U.S.C. § 3. This is such a case.

We affirm the ruling of the district court and remand for further proceedings.

AFFIRMED AND REMANDED.

---

4. We have noted in discussing a related principle that "[t]he courts have uniformly held that the arbitrability of the arbitrable claim is not to be defeated or delayed because it is joined in the litigation with other issues not subject to arbitration." *In re Mercury Construction Corp.*, 656 F.2d 933, 940 (4th Cir.1981), *aff'd sub nom.*

*Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Our discussion was directed to arbitrable claims that are readily severable from nonarbitrable claims, a situation distinct from that presented by "intertwining" cases.