959 F.2d 231
 60 USLW 2684
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
HIBBARD BROWN & COMPANY, INCORPORATED; Richard P. Brown,
Plaintiffs-Appellants,
v.
ABC FAMILY TRUST; Mrs. Bernhardine J. Abernathy; Mr. &
Mrs. Richard C. Ade; Amsler Ag. Products, Incorporated,
Retirement Trust; Mr. & Mrs. Richard Beckham; L. John
Bingham; B & Z Incorporated; Charles B. Beam; Carl A Bair
Revocable Living Trust; Mr. & Mrs. Robert D. Bittle; Alfre
D A. Bollock, Jr.; Ila E. Bower; Thomas E. Bower;
Jeromec. Breeding; Helen M. Brooks; Vivian G. Cahill;
Jerry Calloway; Barbara Cannaruzzo; Mr. & Mrs. William F.
Clarke; Cloutier Family Revocable Living Trust; Mr. & Mrs.
Curtis Coffey; Mr. & Mrs. Jerry V. Cole, II; Faye E. Cole;
Evelyn Coneys; Mr. & Mrs. Herbert M. Cook; Crop Maker Soil
Service, Incorporated, Retirement Trust; Eleanor M. Curry;
Cycles, Incorporated Pension Plan; Mr. & Mrs. Grant S.
Dannelly; Davis Office Supply Profit Sharing Plan; Irene
Dugan Revocable Living Trust; Dr. Edward & Dr. Anita
Dworkin; Keith East; Tina L. Evans; Fenn Lumber Company
PSP; Fillmen Family Revocable Living Trust; Ann A. Flavin
Revocable Living Trust; James P. Flavin Revocable Living
Trust; Boyd Florence Estate; Michael J. Fourman DDS,
Incorporated Employees' PSP; Steven L. Fuller; Don N.
Futch; G-K Optical Company Pension & Trust; Wilma L.
Gastineau; Paul Gaver Martial Trust; Roy & Betty Gilbert;
Hazel B. Goddard; Margaret C. Goodwin; James M. Graham,
III; Harvey Gutwein; Mr. & Mrs. Jackson S. Haden; Helen
Hale; Richard Hale; Harriet L. Haugland; Palmer J.
Haughland; Lois C. Hawlet; Dorothy Heinrich; Christie D.
Helderle; Helen Helderle Revocable Trust; James M.
Hensley; Anthony B. Hession; Robert L. Houston; Loren J.
Hudspeth; Mary Lou Hudspeth; F & J Insurance Retirement
Trust; Mr. & Mrs. Robert R. Jenkins; Jewett Orthopaedic
Clinic Pension Plan; Alberta H. Johnson; Mildred Johnson;
Richard L. Kennard; R. H. Kennard; Mr. & Mrs. Thomas C.
Kennard, Jr.; Anne E. Kennard; Alta P. Kilgus; Lisa G.
Kline; Linda S. Kornegay; Howard F. Kring; Doris M.
Kruckemyer Trust; Lloyd F. Kruckemyer Trust; Bert J.
Kuhlman Revocable Living Trust; Lamdmark Emgineering
Definee Benefit Trust; Diane S. Large; Eddie H. Lawson;
Mr. & Mrs. Harry E. Lawson; William F. Leonard, Sr.
Revocable Living Trust; Mr. & Mrs. David Lester; Jay
Leuszler; Mr. & Mrs. Lawrence G. Loper; Bob J. Marshall;
Bruce & Deborah Marshall; Martinowhite Printing Pension
Trust; Mr. & Mrs. Harry J. Mckay; Michael E. Menard; Mr.
& Mrs. John A. Metzger; William F. Metzger; Margery Mico;
Patricia Mindling, Yrma H. Morning; Mr. & Mrs. Michael
Moynihan; Steven R. Mullin; James J. Mundell; Mr. & Mrs.
Edwin F. Nagel; Mr. & Mrs. Raymond C. Nichols; Barbara H.
O'Donnell Revocable Living Trust; Mr. & Mrs. Christopher J.
O'Donnell; Mr. & Mrs. John B. Olson; Mr . & Mrs. Carlton
Ray Patrick, Sr.; Harry G. Pett, Sr. Irrevocable Trust;
Linnea R. Pett Trustee for Me Pett Estate; David M.
Phillips; Mr. & Mrs. Rhoderick W. Rasmussen; Mr. & Mrs.
Rob Roy Ratliff; Mr. & Mrs. William E. Redden; Mr. & Mrs.
Charles J. Rommell; Carl E. Roth Revocable Living Trust;
Mr. & Mrs. Clarence Ryden; Robert D. Ryall; Mr. & Mrs.
Robert D. Schmaltz; Sherwood Family Revocable Living Trust;
Barbara J. Simmons; Edward J. Sprawka, Sr.; Thomas M.
Sroufe; Burton E. Stevenson; Anna P. Sturgis; Mr. & Mrs.
Robert L. Tarantine; Mr. & Mrs. George Thompson; Leonard
W. Thompson; Ruth H. Thompson; Albert & Mary Thorman; Mr.
& Mrs. Leonard Tier; Charles E. Tracy, Jr.; Charles E.
Tracy, Sr.; Mr. & Mrs. Charles H. Trumbo; Mr. & Mrs. Ralph
Tuggle, Jr.; Jane Turpin; William A. Tyler, Jr.; Utah
Paper Box Company Profit Sharing Weening; Ruth Walker;
Melissa A. Cook Whitaker; Mary White; Mark L. Williams;
Virgil D. Williams; Lucille D. Wingard; Mr. & Mrs. Waymone
B. Wright; Mr. & Mrs. Frank W. Young, Defendants-Appellees,
and
Richard S. Bowers; James E. Corbett; Phillip Harris;
Deborah Harris; Wayne D. Kirby; Mr. & Mrs.
Donald R. Lane, Defendants,
 No. 91-1225.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 6, 1992
Decided: April 8, 1992
 
 ARGUED: Richard F. Horowitz, HELLER, HOROWITZ & FEIT, P.C., New York, New York, for Appellants.
 Steven Jay Gard, PAGE & BACEK, Atlanta, Georgia, for Appellees.
 ON BRIEF: Sigmund S. Wissner-Gross, David I. Lobel, HELLER, HOROWITZ & FEIT, P.C., New York, New York; George Beall, Ty Cobb, HOGAN & HARTSON, Baltimore, Maryland, for Appellants.
 Marion Smith, II, FORTSON & WHITE, Atlanta, Georgia; J. Hardin Marion, John B. Isbister, TYDINGS & ROSENBERG, Baltimore, Maryland, for Appellees.
 Before RUSSELL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Appellant in this case appeals the district court's dismissal of a motion to enjoin arbitration proceedings before the National Association of Securities Dealers, Inc. (NASD) in a securities fraud dispute. Because we find that the party initiating arbitration did not waive its arbitration rights by first bringing suit in federal court, we affirm the district court's dismissal. We also affirm, for reasons stated below, the district court's dismissal of Appellant's request to disqualify Appellee's counsel in the arbitration proceedings.
 
 I.
 
 2
 The underlying dispute between the parties arose out of the sale of limited partnership interests and promissory notes by Hibbard Brown & Co., Inc. (Hibbard Brown), an investment banking firm, to numerous investors. The Appellees in this suit are organizations comprised of former Hibbard Brown customers (Investors), who contributed funds to the organizations for the purpose of bringing a securities fraud action against Hibbard Brown.
 
 
 3
 Investors filed suit against Hibbard Brown in the United States District Court for the Northern District of Georgia on December 22, 1989. The substance of their claims was that Hibbard Brown sold securities issued by H. Ellis Ragland (Ragland), or by partnerships under his control, to fund fraudulent real estate ventures. Ragland had used later-acquired funds to pay dividends to previous investors. Investors charged that Hibbard Brown knew or should have known that the real estate partnerships were financially unstable and, in fact, that Hibbard Brown had altered its books and records to hide its knowledge of and participation in Ragland's schemes.
 
 
 4
 In response to the action filed against it, Hibbard Brown filed numerous motions seeking to dismiss the claims, disqualify Investors' counsel, and transfer the action to Maryland. Investors filed memoranda opposing each of these motions. During these pretrial proceedings, Investors also sought discovery by serving deposition notices and document requests. Hibbard Brown moved the court for a protective order pending the resolution of their motion to transfer or dismiss. On August 27, 1990, the court entered an order granting Hibbard Brown's motion to transfer to the District of Maryland and deferred judgment on all other motions to that court.
 
 
 5
 Ten months after filing their original complaint, on October 16, 1990, Investors filed a motion in the U.S. District Court in Maryland to stay the court action in favor of arbitration proceedings, which they intended to initiate before the NASD.[1] Investors then filed their arbitration claim with the NASD shortly thereafter. Before the district court could decide on the motion to stay, Investors filed a notice of voluntary dismissal of the court action, electing to pursue only their arbitration claims before the NASD.[2]
 
 
 6
 After dismissal, Hibbard Brown filed this action in the district court seeking a preliminary and permanent injunction against arbitration of Investors' claims. They argued that Investors had waived the right to arbitrate by actively litigating their claims in federal court and by delaying their request to arbitrate until ten months into the federal court proceedings. Hibbard also requested, in the event the court declined to enjoin arbitration, disqualification of Investors' counsel in the arbitration proceedings for prior improper conduct.[3] The district court denied both requests. In dismissing the request to enjoin arbitration, the court concluded that, in light of the strong federal policy favoring arbitration, Hibbard Brown had not shown sufficient prejudice from the dismissal of federal court litigation to justify its requested injunction. The court then refused to reach the merits of Hibbard Brown's disqualification of counsel claim, stating that even assuming it had jurisdiction to order such remedy, the decision would be more appropriately made after development of a full factual record on the underlying dispute. Hibbard Brown appeals both decisions.
 
 II.
 
 7
 Since the parties do not dispute the existence of a valid arbitration agreement and since this case involves interstate commerce, the provisions of the Federal Arbitration Act, 9 U.S.C.ss 1-15 (1988) apply here. The Act's strong federal policy favoring arbitration must guide our analysis in this case. Congress, in the Federal Arbitration Act, declared written agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts have consistently interpreted this mandate broadly, addressing questions of arbitrability "with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); accord Peoples Sec. Life Ins. v. Monumental Life Ins., 867 F.2d 809, 812 (4th Cir. 1989). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Hosp., 460 U.S. at 24-25. Therefore, we approach the issues in this case with deference to such federal policy.
 
 A.
 
 8
 Hibbard Brown asserts that Investors waived their right to arbitration when they brought claims in federal court, actively litigated them, and delayed seeking arbitration. Section 3 of Title 9 provides an exception to the broad mandate to arbitrate where the party seeking arbitration is "in default in proceeding with such arbitration." We have previously interpreted that provision to mean that "[a] litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay [of federal court proceedings]." Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987) (quoting Maxum Found., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985)). In Fraser, this Court found that Merrill Lynch had waived its right to arbitrate by waiting over four years to move for compelled arbitration and, in the interim, proceeding with extensive discovery and successfully moving for summary judgment on several issues, all of which acted to Fraser's detriment. 817 F.2d at 252.
 
 
 9
 Yet we have no mechanistic formula for determining waiver. The objecting party must show actual prejudice under the circumstances. It is well settled law that a party is not deemed to have waived its right to arbitration merely by filing a court action or as a result of delay, without also showing prejudice. Fraser, 817 F.2d at 252.
 
 
 10
 In the instant case, we may find waiver, and thus enjoin arbitration, only if we conclude that Hibbard Brown was prejudiced by the federal suit. Unlike Fraser, the facts here do not support such a conclusion. As the district court found, most of the $160,000 spent on legal fees by Hibbard Brown in litigation would have been incurred regardless of the forum, as such fees were charged for investigation and researching legal issues. Hibbard Brown also contends that arbitration could deprive it of joining necessary third-party defendants and compelling related discovery because these third parties, as former employees of Hibbard Brown, are no longer bound by the NASD arbitration agreement. However, the Supreme Court expressly held in Moses H. Cone Hosp. that the risk of alienating related claims is a necessary misfortune resulting from federal law enforcing arbitration agreements. 460 U.S. at 20. Furthermore, this prejudice cannot be attributed to Investors "substantially utilizing the litigation machinery"; rather, it is a result of federal arbitration law which permits separation of related claims. Finally, no discovery has commenced in this case that might prejudice Hibbard Brown's case in arbitration.[4] This Court previously dismissed a claim of waiver in a case where discovery already had commenced and concluded before the court ordered a stay for arbitration, because the discovery would not impede the objecting party's claims in arbitration. Maxum Found., Inc. v. Salus Corp., 779 F.2d 974, 982 (4th Cir. 1985). Since no discovery has commenced here, there can be no prejudice in this regard. Accordingly, we do not find sufficient prejudice to Hibbard Brown from the litigation activities of Investors to constitute a waiver of Investors' arbitration rights.
 
 B.
 
 11
 We review the district court's dismissal of Hibbard Brown's disqualification of counsel claim for abuse of discretion. The Federal Local Court Rules for the District of Maryland grants the court broad authority to "take any action it deems appropriate pursuant to any ... rule of this court" in the matter of attorney discipline. D. Md. R. 702(10). Under this standard, we do not find that the district court abused its discretion in dismissing this claim without prejudice. The court sought to avoid duplicative fact-finding proceedings. It held that a decision on the merits of disqualification would require development of a full factual record on the underlying dispute. Beyond this, a decision on disqualification by the district court at this time could have the result of interfering with the arbitration proceedings.
 
 
 12
 In conclusion, we find that Investors did not waive their right to arbitration by initially bringing this action in federal court. They did not utilize the court system to such an extent as to prejudice Hibbard Brown and constitute a waiver. We further find that the district court did not abuse its discretion in dismissing Hibbard Brown's disqualification of counsel claim, when that claim would be more appropriately decided after a full development of the facts surrounding the underlying claim. Accordingly, we affirm the district court's decision below.
 
 AFFIRMED
 
 
 [1]
 Investors' right to arbitrate is undisputed here. Hibbard Brown is a member of NASD. Section 12(a) of the Code of Arbitration Procedure of the NASD confers a right to arbitrate securities sales disputes upon customers of NASD members. In addition, many of the Investors may have had arbitration clauses in their individual purchase contracts
 
 
 [2]
 Voluntary dismissal was permitted under Fed. R. Civ. P. 41(a) since no answer or motion for summary judgment had been filed in this case
 
 
 [3]
 Hibbard Brown asserts as grounds for disqualification improper solicitation of clients; violations of securities law in connection with communications to potential clients; improper formation of a non-profit corporation for instituting the underlying action; and conflicts of interests among investors
 
 
 [4]
 Hibbard Brown argues that Investors has already deposed and taken document discovery of Ragland, which opportunity it will be denied in arbitration. Even if this is so, the deposition and discovery actions were taken in a separate bankruptcy proceeding involving Ragland and his partnerships. Thus, like Hibbard Brown's other assertion of prejudice, this alleged prejudice is not the result of litigation activity conducted by Investors prior to arbitration