**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS N. BIRD,
<u>Plaintiff-Appellant,</u>

v.

BLAND COUNTY SCHOOL BOARD;
STEPHEN L. KELLEY, personally and
in his official capacity as chairman
of the Bland County School Board,
Route 1, Bland County, Virginia
24315; TOMMY R. KITTS, personally
and in his official capacity as vice-
chairman of the Bland County
School Board, Route 1, Bland,
Virginia 24315; PAUL D. LOONEY,
personally and in his official
capacity as a member of the Bland

County School Board, Nationwide
Insurance Company, Bland,
Virginia; LARRY S. BALL, personally
and in his official capacity as a
member of the Bland County
School Board, Rocky Gap, Virginia,
<u>Defendants-Appellees,</u>

and

D. JACK GOLD, personally and in his
official capacity as superintendent
of the Bland School Division,
Office of the Superintendent Bland
County School Board, Bland,
Virginia 24315,
<u>Defendant.</u>

No. 98-2455

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-97-604-R)

Argued: September 22, 1999

Decided: January 14, 2000

Before MURNAGHAN, MICHAEL, and KING, Circuit Judges.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Paul Graham Beers, GLENN, FELDMAN, DARBY &
GOODLATTE, Roanoke, Virginia, for Appellant. John Dickens Eure,
JOHNSON, AYERS & MATTHEWS, Roanoke, Virginia, for Appel-
lees. **ON BRIEF:** Joseph A. Matthews, Jr., Lori E. Jones, JOHNSON,
AYERS & MATTHEWS, Roanoke, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Thomas Bird, a tenured high school teacher, sued the Bland County
(Virginia) School Board, the four members of the board, and the
county school superintendent under 42 U.S.C. § 1983, alleging that
the defendants violated his due process right to an impartial decision

2

on his termination. A jury concluded that the board had prejudged Bird's case and awarded him $71,900 in lost wages and $5,000 for emotional distress. After the jury returned its verdict, the district court granted the defendants' Fed. R. Civ. P. 50(b) motion for judgment as a matter of law. Bird appeals and we reverse.

I.

In our plenary review of a district court's ruling on a Rule 50 motion, we review the evidence (and draw all reasonable inferences) in the light most favorable to the non-movant, here Bird. See Price v. City of Charlotte, North Carolina, 93 F.3d 1241, 1249 (4th Cir. 1996).

Bird was a high school math teacher in the Bland County, Virginia, school system for fourteen years (from 1981 to 1995). He had tenure, which meant that he was "entitled to continuing contracts during good behavior and competent service." Va. Code Ann. §§ 22.1-303, 22.1-304 (Michie 1997). By all accounts, Bird was a dedicated and talented classroom teacher. In addition, he was generous in giving his time to support students in their extracurricular activities. On the last day of the 1994-95 school year at Bland High School, Bird finally lost his composure in dealing with one student, who was a bully, and he (Bird) was fired as a result.

The troublemaker was Sammy Blankenship, a strong, 220-pound lineman on the high school football team. During his senior year Blankenship went out of his way to provoke Bird. Blankenship disturbed Bird's classes by squeaking his tennis shoes and whistling outside Bird's classroom door. During one incident when Blankenship was disruptive, Bird ordered him to class. Blankenship refused to go and cursed Bird. Bird reported the incident to the principal, who suspended Blankenship for a day. Later, when Bird was admonishing another student for cursing in a school hallway, Blankenship interrupted and began yelling at Bird. When Bird told Blankenship that he was being rude, Blankenship said "let's go outside," indicating that he wanted to settle their differences with a fistfight. Bird then instructed Blankenship to go to the principal's office, but Blankenship refused. When Bird reported this incident to the principal, he got little support.

3

The principal simply told Bird to "try to stay away from the situation."

On June 2, 1995, the last day of school, as Bird was driving to Bland High, Blankenship (who was driving another car) passed Bird. As Blankenship passed, he gave Bird the finger for five to ten seconds. Bird motioned for Blankenship to pull off the road. Blankenship pulled into a large driveway within sight of the high school, and Bird pulled in beside him. Bird rolled down his car window and said, "What's the problem, Sammy?" Blankenship then got out of his car and said to Bird, "Get out of the car." Bird complied, and Blankenship came toward Bird with his fists clenched, saying "I'm getting tired of taking this sh-- off of you." Blankenship then bumped Bird with his chest, knocking Bird backwards. Blankenship bumped Bird a second time and kept pressing toward him. At this point, Bird threw up his right hand and hit Blankenship on the chin, "not very hard, not very forcefully." A very one-sided fight ensued. Blankenship gave Bird a severe beating that lasted for five to ten minutes. Blankenship hit Bird repeatedly about the face and head, and Bird landed only three or four ineffective punches. When another student finally broke up the fight, Bird was bleeding from his mouth and nose, and his face was badly bruised. Bird had to see a doctor, who treated him and ordered him to rest at home for four days. Blankenship was unhurt.

On June 28, 1995, the Bland County Superintendent of Schools, Dr. Jack Gold, notified Bird that he (Gold) was recommending that the school board dismiss Bird because of his altercation with Blankenship. Bird requested a hearing before the board, which he was entitled to under Virginia law. See Va. Code Ann. § 22.1-310. The hearing was set for September 7, 1995. In the meantime, Bird was temporarily reassigned to the school system's central office and placed on administrative leave pending his hearing.

Bird's fate became entangled with efforts to improve Bland High School's new (and struggling) football program. Beginning in 1994 two of Bland's coaches, Roger Beaman and Andy Selfe, began recruiting John Chmara, a popular and highly successful high school football coach, to join Bland High's coaching staff. Chmara had coached two state championship teams in West Virginia, and he was the winningest coach in Bluefield High School's history. Although

4

Chmara was then teaching middle school social studies, he had recently completed a ten-year stint as athletic director at Fauquier High School in Virginia. Throughout the 1994-95 school year, Coaches Beaman and Selfe pressed Chmara to consider coming to Bland High School. At their invitation Chmara visited Bland High to look at the athletic facilities. Coach Beaman arranged for Chmara to meet with the school board chairman, defendant Stephen Kelley, to discuss the Bland County football program. Chmara eventually indicated that he would be willing to join the football coaching staff at Bland High, but only if he was awarded a regular teaching contract. Coach Beaman then urged the principal of Bland High to try to find a teaching position for Chmara. Although Chmara was certified to teach math, he had never taught that subject in nearly forty years of coaching and teaching.

On August 3 and 10, 1995, Dr. Gold ran a newspaper advertisement for a high school math teacher to replace Bird. The school system received about eighteen applications, including Chmara's, for the position. Despite the fact that Chmara had never taught math, only he was interviewed for the job.

Bland High's football practice started on August 7, 1995, and Chmara began coaching on August 9, the third day of practice. The school board formally hired Chmara at its August 15, 1995, meeting. He was given two contracts, one to teach and one to coach football. The board also decided at the August 15 meeting that Bird would not be returned to the classroom. The board members, however, all maintain that they were told by Dr. Gold that there was money available in the budget to employ Bird in the central office if he was retained after his hearing. However, there was no open position in the central office, and within the next twelve months the board was forced to lay off seven employees because of budget shortfalls.

Bird's dismissal hearing was held on September 7, 1995. At the hearing the school administration's lawyer said that the question before the board was whether Bird would be fired or returned to the classroom. No one contradicted the lawyer; in other words, no one said that employment in the central office was an option. Bird was fired after the hearing.

5

Bird then sued the Bland County School Board, its four members, and the county superintendent alleging that they had violated his Fourteenth Amendment right to procedural due process by prejudging his case prior to the hearing. The jury agreed and awarded Bird damages totaling $76,900. The district court set the verdict aside on the grounds (1) that the evidence was insufficient to show that the board prejudged Bird's case and (2) that Bird waived his right to an impartial decisionmaker because he knew of the board's bias before the hearing and did not object. Bird appeals.*

II.

Bird first argues that the district court erred in concluding post-trial that he "failed to present sufficient evidence to prove that the Board members had irrevocably closed their minds prior to the Hearing." Bird v. Bland County School Bd., Civ. No. 97-0604-R, mem. op. at 9 (W.D. Va. Sept. 16, 1998). We agree with Bird.

Bird had a Fourteenth Amendment due process right to an impartial hearing, without prejudgment of his case, by the school board on the question of whether he should be terminated. See Schweiker v. McClure, 456 U.S. 188, 195 (1982); Satterfield v. Edenton-Chowan Bd. of Educ., 530 F.2d 567, 574-75 (4th Cir. 1975). In response to special interrogatories, the jury found that Bird had "proven by a preponderance of the evidence that [each board member] prejudged the facts to the extent that he irrevocably closed his mind to retaining [Bird] in the School Board's employ, whether as a teacher or in some other capacity, before [the board member] actually heard the matter on September 7, 1995."

The district court's decision was anchored on the testimony of each board member that he was told that there was a fully funded central office position available for Bird if he was retained and that the board had not reached a decision before the hearing. However, the jury rejected the testimony of the board members and, in rendering a verdict for Bird, concluded that the board had prejudged his case. We must reinstate the jury's determination if there is evidence on which

_____

*Bird does not appeal the district court's dismissal of superintendent Gold from the case.

6

a reasonable jury could have returned a verdict in favor of Bird. <u>Price v. City of Charlotte, North Carolina</u>, 93 F.3d at 1249-50. There was such evidence here.

There is direct evidence that on August 15, 1995, the board gave the new football coach, John Chmara, a contract to fill Bird's old position as math teacher and that the board decided on the same day that Bird would not be returned to the classroom. The issue is whether there is evidence to support a finding that the board also decided before Bird's hearing that he would not be given an administrative position. There is direct evidence (1) that the school administration's lawyer said at the hearing that the only question for the board was whether Bird would be fired or returned to the classroom (there was no mention of an administrative job); (2) that there was no position open in the central office that was suitable for Bird; and that (3) within the twelve months following Bird's dismissal, seven (non-teacher) employees were laid off because of budget shortfalls. A reasonable jury could infer from this evidence that the board had decided prior to the hearing not to retain Bird in any position. <u>See Sales v. Grant</u>, 158 F.3d 768, 780 (4th Cir. 1990). The evidence was therefore sufficient to support the jury's finding that the board prejudged his case.

III.

Bird next argues that the district court erred in concluding (as a matter of law) that he waived his right to an impartial decisionmaker because he knew the school board had prejudged his case prior to the hearing on September 7, 1995. We review the waiver issue de novo, <u>see Fraser v. Merrill Lynch</u>, 817 F.2d 250, 253 (4th Cir. 1987), and we disagree with the district court's conclusion.

The district court based its waiver decision on a letter, dated September 5, 1995, that Bird wrote to defendant Stephen Kelley, the chairman of the Bland County School Board. The letter establishes that prior to the hearing Bird knew the following: that Chmara had already been hired and was initially assigned to teach the algebra classes that Bird would have taught; that Dr. Gold, the superintendent, did not want Bird teaching at Bland High School; and that Dr. Gold would likely contend that he could "reassign[Bird] as he pleases."

7

The substance and tone of Bird's letter, however, did not indicate that he believed the board had prejudged his case. For example, Bird argued to Kelley that he should be reassigned to Bland High School. Bird suggested that Chmara could be reassigned, perhaps to teach social studies. Finally, Bird said that once the hearing was over, he "again want[ed] to walk the halls of Bland High with my head held high with students and teachers alike knowing that I'm not a villain; that I have the faith and confidence of the Bland County School Board." Bird was trying to make the case that he should be restored to the classroom at Bland High School. His letter does not either say or indicate that he believed the board had prejudged his case. In short, Bird did not waive his right to an impartial decisionmaker.

IV.

The district court's order of September 16, 1998, granting the renewed motion of the Bland County School Board and its four members for judgment as a matter of law is reversed.

REVERSED

8