[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15208
_____

D.C. Docket No. 1:06-cv-23035-MGC

GRIGSBY & ASSOCIATES, INC.,
CALVIN B. GRIGSBY,

Plaintiffs-Appellants,

versus

M SECURITIES INVESTMENT,
HOWARD GARY & COMPANY,
HOWARD V. GARY,
NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 28, 2015)

Before MARCUS and JILL PRYOR, Circuit Judges, and RESTANI,[*] Judge.

_____

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade,
sitting by designation.

JILL PRYOR, Circuit Judge:

Calvin Grigsby and Grigsby & Associates, Inc. (collectively, "Grigsby") appeal the district court's decision, upon remand from this Court, that M Securities Investment, Howard Gary & Co., and the Estate of Howard Gary (collectively, "M Securities") did not waive their right to arbitration. Grigsby also argues that the district court abused its discretion in refusing to hold an evidentiary hearing on the issue. After careful consideration and with the benefit of oral argument, we affirm.

## I. BACKGROUND

As more fully set forth in our previous opinion in *Grigsby & Associates, Inc. v. M Securities Investment* ("*Grigsby I*"), this dispute arises out of a municipal bond offering by Miami-Dade County. 664 F.3d 1350, 1351 (11th Cir. 2011) (depublished).[1] M Securities and Grigsby agreed to participate in the bond offering. In 1996, they entered into an agreement whereby they co-underwrote the bond while GBR Financial Products ("GBR"), an entity partially owned by Grigsby & Associates, Inc., arranged an interest rate swap for the bond. For its role in the transaction, M Securities was to receive compensation of 25% of the underwriting fees and 50% of the net profits from the swap transaction (after deducting expenses). Unfortunately, GBR failed to remit the swap transaction

---

[1] After issuing the opinion, we subsequently re-designated it as unpublished. *See* Order on Petition for Rehearing (Doc. 191-1). "Doc" refers to the docket entry in the district court record in this case.

profits to Grigsby.  As a result, Grigsby was unable to pay the fees and profits owed to M Securities pursuant to their agreement.  *Id.*

Lawsuits followed.  Grigsby sued GBR in an attempt to recover his share of the swap transaction profits while M Securities filed lawsuits against Grigsby and GBR seeking to recover the fees and share of profits it was owed.  *Id.*  M Securities filed a total of four lawsuits against Grigsby.  It filed the first of these lawsuits in federal court; the district court dismissed the case *sua sponte* for failure to execute timely service of process.  The second lawsuit, filed in state court, was served on Grigsby, who filed a motion to dismiss.  Ultimately, the case was dismissed for lack of prosecution.  M Securities filed a third lawsuit in federal court, but the district court dismissed the case *sua sponte* because it was identical in all material respects to the first lawsuit.  M Securities then filed a fourth lawsuit in federal court against Miami-Dade County and Grigsby.  It ultimately settled its claims against Miami-Dade County and never issued summons to Grigsby.

In 2003, after all of its lawsuits against Grigsby had been dismissed, M Securities filed a malpractice action against its attorney alleging that he had failed to take any action to prevent the dismissal of its claims against Grigsby.  M Securities maintained that, because the statute of limitations had run, the claims

could not be re-filed.[2]

Grigsby settled its lawsuit against GBR in 2005. In 2006, upon discovering the settlement, M Securities initiated an arbitration proceeding against Grigsby before the National Association of Securities Dealers ("NASD").[3] Grigsby filed an action in district court to enjoin the arbitration, arguing that M Securities waived its right to arbitrate. The district court denied Grigsby's motion for a temporary injunction on the ground that the issue of waiver was for the arbitrator to decide. The arbitration proceeded. The arbitrator awarded M Securities compensatory damages of $100,201 plus interest and attorney's fees.[4] Grigsby filed a motion in district court to vacate the arbitration award, again arguing that M Securities waived arbitration, while M Securities moved to confirm the award. The district court entered an order confirming the award. *Id.* at 1351-52.

Grigsby appealed the district court's orders denying the injunction and confirming the arbitration award. In *Grigsby I*, we concluded that "the district court's failure to decide itself the waiver issue was a legal error and . . . an abuse of discretion," vacated the district court's order granting the motion to confirm

---

[2] The record contains no evidence regarding the malpractice lawsuit's outcome, which is irrelevant here.

[3] M Securities and Grigsby both were members of the NASD. NASD members agree, pursuant to their agreements with the NASD, to arbitrate disputes arising out of business transactions with other members. NASD Code of Arbitration Procedure, Rule 10101(a)(c).

[4] The arbitrator also sanctioned Grigsby $10,000 for failing to comply with discovery obligations.

arbitration, and remanded for the district court to "consider, on the merits, [Grigsby's] claim that [M Securities] waived the right to arbitrate."[5] 664 F.3d at 1354. We instructed the district court that if it concluded no waiver occurred, it may reenter its order confirming the arbitration award.[6] *Grigsby I*, 664 F.3d at 1354-55.

On remand, M Securities again moved to confirm the arbitration award, arguing there was no waiver. Grigsby opposed the motion and requested an evidentiary hearing. The district court instead heard oral argument on the motion. At oral argument, Grigsby reiterated his request for an evidentiary hearing. The court indicated, "[W]e may get to that," but stated that it first wanted to hear only argument of counsel. After the argument, the court permitted Grigsby to submit new evidence that his counsel had referenced during oral argument and that he contended demonstrated M Securities' waiver. The evidence consisted of the county resolution authorizing the bond offering, the applicable NASD arbitration rules, litigation documents from M Securities' prior lawsuits against Grigsby,[7] newspaper articles about those lawsuits, and a declaration from GBR's principal

---

[5] Our decision in *Grigsby I* did not address whether the court otherwise erred in confirming the arbitration award.

[6] We reiterated these instructions in a subsequent denial of rehearing en banc. *See* Order on Petition for Rehearing (Doc. 191-1).

[7] These documents included docket sheets from M Securities' third and fourth lawsuits, an order granting an unopposed motion to file amended pleadings from the fourth lawsuit, and answers to interrogatories from its malpractice lawsuit.

stating that GBR never agreed to share profits from the bond offering with M

Securities and identifying legal fees that GBR incurred in responding to M

Securities' lawsuits against it.  Grigsby presented no evidence about legal fees and

expenses he incurred or his time spent in responding to the four lawsuits.

The district court concluded that M Securities did not waive the right to

arbitration.  Accordingly, the district court reentered its order confirming the

arbitration award.  Grigsby now appeals.

## II. DISCUSSION

### A. Waiver

Grigsby contends the district court erred in deciding that M Securities did

not waive its right to arbitration.  We review *de novo* a district court's legal

conclusion that a party has not waived its right to arbitration.  *Ivax Corp. v. B.

Braun of Am., Inc.*, 286 F.3d 1309, 1316 (11th Cir. 2002).  We review for clear

error the underlying factual basis for that determination.  *Id.* at 1316 n.18.

"The ability of parties to agree to arbitrate their disputes is well-recognized."

*Id.* at 1315.  In fact, "federal policy strongly favors arbitration."  *Krinsk v.

SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 n.17 (11th Cir. 2011).  "[A]s a matter of

federal law, any doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration . . . ."  *Moses H. Cone Mem'l Hosp. v. Mercury

Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Notwithstanding this strong federal policy, "an agreement to arbitrate, just like any other contract, may be waived." *Ivax Corp.*, 286 F.3d at 1315 (alteration and internal quotation marks omitted). "A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right and, in so acting, has in some way prejudiced the other party." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (citation, alteration, and internal quotation marks omitted). "There is no set rule . . . as to what constitutes a waiver . . . of the arbitration agreement." *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir. 1971).[8] Whether waiver has occurred "depends upon the facts of each case." *Id.* Our precedent provides some guidance, however. We have recognized that a party who "substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate." *S & H Contractors, Inc.*, 906 F.2d at 1514 (alterations and internal quotation marks omitted). Additionally, in determining whether there is prejudice to the other party, "we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *Id.* Notably, though, "the party who argues waiver 'bears a

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

heavy burden of proof.'"  *Krinsk*, 654 F.3d at 1200 n.17 (quoting *Stone v. E.F.*

*Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir.1990)).

Grigsby points us to a number of factors he contends demonstrated that M

Securities acted inconsistently with the right to arbitration, including that M

Securities: (1) filed four lawsuits prior to initiating arbitration, (2) sued its prior

counsel for malpractice for failing to diligently prosecute its claims within the

statute of limitations period, and (3) waited 10 years after the closing of the bond

offering before initiating arbitration.

We conclude there was no error in the district court's determination that M

Securities did not waive the right to arbitration.  First, we reject Grigsby's

argument that M Securities waived its right to arbitration by filing lawsuits.

Granted, M Securities invoked the litigation machinery when it filed four lawsuits

against Grigsby.  Filing lawsuits prior to initiating arbitration certainly can support

a finding of waiver, particularly when the opposing party expends significant time

and resources responding to the lawsuits.  *See S & H Contractors, Inc.*, 906 F.2d at

1514.

Nonetheless, M Securities' prior lawsuits were not inconsistent with the

right to arbitration because they were insubstantial.  *See id.* (party who

"substantially invokes the litigation machinery prior to demanding arbitration may

waive its right to arbitrate" (alterations and internal quotation mark omitted)).  M

8

Securities never even served Grigsby with three of the lawsuits; they never progressed beyond the filing of the complaints. Two of the cases were dismissed *sua sponte* before Grigsby could be served, and one settled before summons was issued. In the remaining case, Grigsby filed only a single motion to dismiss, to which M Securities failed to respond, and the case eventually was dismissed for want of prosecution. In contrast, where we have held that a party waived its right to arbitration by substantially participating in litigation, the lawsuits had proceeded much further than those M Securities filed. *See, e.g.*, *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1278 (11th Cir. 2012) (waiver of arbitration found where party conducted discovery for over a year, including more than 15 depositions and production of approximately 900,000 pages of documents); *S & H Contractors, Inc.*, 906 F.2d at 1514 (eight months of litigation prior to arbitration demand involved two motions and five lengthy depositions).

Second, the fact that M Securities filed a malpractice suit against its former counsel for failing to diligently prosecute its claims does not demonstrate that it waived its right to arbitration. Grigsby fails to explain why M Securities' act of filing the malpractice suit against a third party, its former counsel, was inconsistent with the right to arbitrate against Grigsby. At most, the malpractice action's allegation that the statute of limitations had run on M Securities' causes of action against Grigsby indicates that the statute of limitations may have barred M

9

Securities' arbitration claim.  But the statute of limitations is an issue of procedural

arbitrability, not a basis for finding waiver.[9]  *See Howsam v. Dean Witter*

*Reynolds, Inc.*, 537 U.S. 79, 85 (2002).

Third, although M Securities waited more than 10 years after the transaction

at issue before demanding arbitration, the district court did not err in concluding

that there was no waiver.  As a general matter, a delay in seeking arbitration

weighs in favor of finding waiver.  *See Morewitz v. W. of Eng. Ship Owners Mut.*

*Prot. & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1366 (11th Cir. 1995).  We

acknowledge that M Securities waited a very long time before seeking arbitration.

But Grigsby cites no case in which we have held that a party waived its right to

---

[9] Grigsby's argument that the statute of limitations bars M Securities' arbitration claim is one of three arguments that concern procedural arbitrability rather than waiver.  His other two arguments are that (1) M Securities released all claims against Grigsby, and (2) there was no written agreement to arbitrate.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002). We reject all three arguments to the extent Grigsby is arguing that they warrant vacating the arbitration award.  Issues of procedural arbitrability are for arbitrators, not courts, to decide. *Id.*  We vacate such decisions by arbitrators "only in extremely narrow circumstances." *Gianelli Money Purchase Plan & Tr. v. ADM Inv'r Servs., Inc.*, 146 F.3d 1309, 1311 (11th Cir. 1998) (citing 9 U.S.C. § 10).  A court reviewing a petition to vacate an arbitration award may be asked to examine the four statutory grounds for vacating arbitration awards set forth in the Federal Arbitration Act: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption on the part of the arbitrators; (3) the arbitrators engaged in misconduct; and (4) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made.  *Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1326 (11th Cir. 2005); 9 U.S.C. § 10(a).  In addition to the four statutory grounds, a court may vacate an arbitration award "(1) if it is arbitrary and capricious, (2) if its enforcement is contrary to public policy, or (3) if it evinces a manifest disregard of the law." *Peebles*, 431 F.3d at 1326.  Grigsby does not argue error on any of these grounds in this appeal.  We therefore conclude that he has abandoned any such argument.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he . . . raises it in a perfunctory manner without supporting arguments and authority.").

arbitrate solely by delay in initiating the proceeding or based on the amount of time that elapsed.  Although delay is undoubtedly a factor to be considered, in our precedent where waiver was found, the delay was always coupled with other substantial conduct inconsistent with an intent to arbitrate.  *See, e.g.*, *id.* (defendant insurance company colluded in litigation with insured to injured plaintiff's detriment before seeking arbitration); *S & H Contractors, Inc.*, 906 F.2d at 1514 (party participated in extensive, substantial litigation prior to demanding arbitration); *E. C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.*, 551 F.2d 1026, 1040 (5th Cir.) (party demanded arbitration after informing state officials of intent to sue to disallow arbitration), *modified*, 559 F.2d 268 (5th Cir. 1977).

Grigsby identifies only M Securities' filing of lawsuits as conduct inconsistent with the intent to arbitrate but, as we discussed above, we disagree that the filing of what appear to have been "placeholder" lawsuits—which either were never served or dismissed with little effort required of Grigsby—was sufficiently inconsistent with such an intent to compel a finding of waiver.  Although M Securities' conduct was somewhat inconsistent, it did not involve collusion, *Morewitz*, 62 F.3d at 1366, extensive litigation, *S & H Contractors, Inc.*, 906 F.2d at 1514, or an express repudiation of arbitration, *E. C. Ernst, Inc.*, 551 F.2d at 1040.

But even were we to conclude that M Securities acted inconsistently with an

intent to arbitrate, Grigsby has failed to demonstrate prejudice.  Given the

extremely limited nature of the proceedings, Grigsby could not have expended

more than minimal time and resources in defending M Securities' lawsuits, and he

submitted no evidence of either.[10]  In any event, incurring minimal fees in

responding to lawsuits is insufficient to establish prejudice supporting a finding of

waiver.  *See Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 775-76 (10th Cir. 2010);

*Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 206-07

(4th Cir. 2004) (recognizing that "minimal nature of the discovery" was

"insufficient to establish prejudice"); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575,

578 (5th Cir. 1991) (holding there was no prejudice in case in which parties

conducted "minimal discovery" in litigation).

Grigsby also contends that he was prejudiced by the death of a witness and

party to the dispute, Howard Gary.  But Gary was present and testified at the

arbitration.  To the extent Grigsby argues he was prejudiced because Gary could

not testify at an evidentiary hearing on the issue of waiver, he fails to describe the

content of Gary's expected testimony and why it was necessary.  The mere fact

---

[10] We note that Grigsby failed to submit evidence of any expenses he incurred in connection with these lawsuits.  Grigsby contends that he could present no evidence of his litigation expenses because during the significant time that elapsed before M Securities initiated arbitration, he lost his records documenting the expenses, a fact he asserts further demonstrates prejudice.  We disagree.  Even without the legal bills or other such records, Grigsby could have submitted an affidavit or other evidence estimating his expenses, but he failed to do so.

that Gary was unavailable to testify at a hearing—which, as we determine below, was unnecessary due to the non-existence of material disputed issues of fact—is inadequate to demonstrate prejudice. Grigsby also argues that M Securities' lawsuits damaged his reputation, but he does not explain why this constitutes prejudice for purposes of waiver.

In sum, Grigsby has failed to satisfy his "heavy burden of proof" in demonstrating that M Securities acted so inconsistently with its right to arbitrate as to constitute waiver, or that he was prejudiced as a result of any action or inaction by M Securities. *Krinsk*, 654 F.3d at 1200 n.17 (quoting *Stone*, 898 F.2d at 1543). We therefore find no error in the district court's determination that M Securities did not waive its right to arbitration.

## B. Evidentiary Hearing

As a final matter, we address Grigsby's contention that the district court erred in refusing to hold an evidentiary hearing to determine whether M Securities waived its right to arbitration. We understand Grigsby to be advancing two arguments: (1) our decision in *Grigsby I* required the district court to hold an evidentiary hearing, and (2) even if our decision in *Grigsby I* did not require the district court to hold an evidentiary hearing, it nevertheless should have held one to resolve disputed issues of fact. We reject both arguments.

13

1) Scope of the Mandate in *Grigsby I*

We reject Grigsby's argument that our decision in *Grigsby I* required the district court to hold an evidentiary hearing. We review a district court's interpretation and application of this Court's mandate in a prior case *de novo*. *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). "[A]n appellate decision is binding in all subsequent proceedings in the same case unless the presentation of new evidence or an intervening change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice." *Litman v. Mass. Mut. Life Ins. Co.,* 825 F.2d 1506, 1510 (11th Cir. 1987) (en banc). Consistent with this principle and subject to the above exceptions, "[w]hen an appellate court issues a specific mandate it is not subject to interpretation; the district court has an obligation to carry out the order." *Id.* at 1511. We have recognized, however, that a "trial court is free to address, as a matter of first impression, those issues not disposed of on appeal." *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985). "Because a mandate may be vague or precise depending on the issues presented, where a mandate's scope is contested we must determine the scope of the issues considered in the prior appeal." *Cox Enters., Inc.*, 794 F.3d at 1271-72 (alterations and internal quotation marks omitted).

14

Nothing in our decision in *Grigsby I* required the district court to hold an evidentiary hearing on the issue of waiver.  We remanded the case to the district court to "consider, on the merits, [Grigsby's] claim that [M Securities] waived the right to arbitrate."  *Grigsby I*, 664 F.3d at 1354.  We did not order the district court to hold a hearing.  We merely asked it to determine whether M Securities waived its right to arbitrate.  Although the issue of waiver may involve disputed questions of fact, it does not necessarily.  The district court was operating well within the boundaries of our mandate in declining to hold an evidentiary hearing.[11]  *See Ivax Corp.*, 286 F.3d at 1316.

2)  Discretion to Hold an Evidentiary Hearing

Having determined that our mandate did not require the district court to hold an evidentiary hearing, we now consider whether the court erred in declining to do so.  We review a district court's denial of an evidentiary hearing for abuse of discretion.  *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1339 (11th Cir. 1999).  "The application of an abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach."  *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).  As such, "when employing an abuse-of-discretion standard,

---

[11] We also reject Grigsby's assertion that the district court improperly adopted the recitation of facts from our prior decision in *Grigsby I*.  There is no suggestion in the district court's order that that it felt bound by that recitation in deciding waiver.  Indeed, the fact that on remand the district court allowed Grigsby to submit evidence on the issue of waiver was plainly inconsistent with that notion.

15

we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* We conclude there was no abuse of discretion here.

Although it is true that in cases "where facts are bitterly contested and credibility determinations must be made . . . an evidentiary hearing must be held," in cases "where material facts are not in dispute . . . district courts generally need not hold an evidentiary hearing." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312-13 (11th Cir. 1998) (discussing motions for injunctive relief); *see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) (holding that "when there is no genuine issue of fact concerning the formation of the [arbitration] agreement," the court can "decide as a matter of law [whether] the parties did or did not enter into such an agreement"). Thus, in deciding whether the district court erred in denying Grigsby an evidentiary hearing, we must determine whether the court's decision concerning waiver required it to resolve any material disputed issues of fact.

Grisgby contends that the district court was required to hold an evidentiary hearing to give him an opportunity to introduce evidence concerning Grigsby & Associates, Inc.'s business relationship with GBR, which would have shown that the statute of limitations barred M Securities' claims. But as we explained above, whether the statute of limitations has run raises questions about the procedural

16

arbitrability of M Securities' claims, not waiver. Because Grigsby's evidence did not concern waiver, it could not support the existence of a material factual dispute as to that issue. Thus, it was no abuse of discretion for the district court to decline to hold an evidentiary hearing to permit Grigsby to introduce it.

Grigsby also argues that he required an evidentiary hearing to present evidence of the legal fees and expenses he incurred in responding to M Securities' lawsuits. But after oral argument, when he had a chance to submit evidence, he submitted no declarations from witnesses prepared to testify at an evidentiary hearing or other evidence regarding the fees and expenses he claims to have incurred. He opted instead to present a declaration documenting the legal fees incurred by a third party, GBR. Given Grigsby's failure to raise an issue of fact, we conclude that there was no abuse of discretion in the district court's refusal to hold an evidentiary hearing. *See Commerce Park at DFW Freeport v. Mardian Constr. Co*., 729 F.2d 334, 340 (5th Cir. 1984) (no evidentiary hearing on issue of arbitrability necessary when district court afforded parties the opportunity to brief the issues and when there were no disputed material factual questions in the record); *Par-Knit Mills, Inc.*, 636 F.2d at 54.

17

## III. CONCLUSION

The district court did not err in declining to hold an evidentiary hearing on the issue of waiver or in holding that M Securities did not waive its right to arbitration.[12]  Accordingly, we affirm.

**AFFIRMED.**

---

[12] Grigsby raises two other arguments on appeal, first that the district court improperly increased the amount of interest in the arbitration award, and second that the district court improperly interpreted *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004).  As to the interest argument, Grigsby presents no explanation of how the court altered the award or why the alteration was improper.  He also never raised this argument before the district court.  For these reasons, we do not consider it.  *See Sapuppo*, 739 F.3d at 681; *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  Similarly, we reject Grigbsy's argument based on *Klay* because the district court did not rely on *Klay* in concluding that there was no waiver.